Jeffery Eugene Riddle, the appellant, was convicted of assault in the third degree, was fined $500, and was sentenced to one year in the county jail. On this direct appeal from that conviction he contends that the trial court erred in refusing to quash the jury venire and in refusing to grant a mistrial based on alleged juror misconduct. We disagree.
After a jury of 13 was selected from the venire, the bailiff reported to the trial judge that it had been "brought to [his] attention [by another juror] that a lady in the jury room, downstairs, discussed some matters of this case with some seven or eight people down in the jury room." R. 54. The "lady" was identified as veniremember Thompson. The discussion occurred in the jury assembly room after voir dire and before selection of the jury. In response, the trial judge questioned Juror Thompson as follows:
 "THE COURT: Were you talking down in the jury room regarding the facts in this case?
 "JUROR THOMPSON: I was not sure — didn't know the names of the people involved. But I had heard by the grapevine what had happened. And I still don't know the names, but the case just sounded familiar. But, uh —
 "THE COURT: Why did you not identify yourself as having heard that out in court a while ago?
 "JUROR THOMPSON: Well, I'm just — Judge, I'm sorry, I mean I just didn't add it up. And I started thinking about it.
 "Q. THE COURT: What did you say to the other jurors there in the jury room?
 "A. JUROR THOMPSON: I just said, that I think that I had heard this story, when we were sitting down[stairs] in the jury [assembly] room.
". . . .
 "THE COURT: What did you tell the others that you had heard?
 "JUROR THOMPSON: I had heard, I didn't say anything that was not said, not brought out, there, upstairs. That — I mean in the [court]room there. That [appellant] had beaten his stepdaughter.
 "THE COURT: And that's what you said to the other jurors?
"JUROR THOMPSON: Yes.
". . . .
 "MR. MYERS [District Attorney]: I would like to ask whether or not you know if any of the people that you were speaking to in the jury room is seated on the jury panel?
 "JUROR THOMPSON: No. There were the two, the two gray haired ladies that I was sitting with. . . . But neither one of them was called."
R. 56-59.
The trial judge then inquired of the remaining members of the venire who had not been selected for jury service
 "whether or not any of them were within earshot and heard anything that Mrs. Thompson said in the jury room about this case. Or if they heard anybody say anything at anytime, at all, since they were empaneled this morning." R. 60.
However, before anyone could respond, defense counsel requested a mistrial. The trial judge denied the request "at this time. We are going to go out and see what damage has been done and see if the damage is under control." R. 62.
In response to the trial judge's inquiry, four veniremembers raised their hands. There was no response to the trial judge's inquiry as to whether any veniremember heard "anyone else down[stairs] . . . making any statements concerning this case?" R. 64-65. The trial judge then excused those four veniremembers.
The trial judge then made the same inquiries of the thirteen empaneled jurors. There was no response. R. 67. No member of the jury gave any indication that "anyone [had] talked about the facts of this case at anytime this morning with any of [them]." R. 67.
The trial judge concluded: "Gentlemen, I consider that the 13 jurors who have been empaneled for this case have been untainted by the statements made." R. 68. *Page 276 
Defense counsel renewed his motion for mistrial:
 "We would like to renew the motion that we had made earlier. I appreciate the effort that the Court has gone through but our bailiff Mr. Bush reported to us and to the Court that some six to seven people were involved in the conversation. Mrs. Thompson reported to us that she had only spoken to two people. We have now identified a total of four people, which still leaves some one to two to three short of what Mr. Bush reported and two more than what Mrs. Thompson reported.
 "THE COURT: That's not exactly accurate, we've had four people who have responded that they heard the conversation with Mrs. Thompson, which makes a total of five including her." R. 68-69.
The trial judge denied the renewed request for a mistrial, finding that "the damage has been controlled and we have an impartial jury." R. 70. The trial judge was also "satisfied that [Mrs. Thompson] didn't do it maliciously," and excused her from jury service for the remainder of the week. R. 70.
We agree with the trial judge that a mistrial was not justified because the "damage was controlled" and the jury that actually tried the appellant was not influenced by Thompson's comments.
 "A motion for mistrial 'is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion.' Ex parte Jefferson, 473 So.2d 1110, 1114 (Ala. 1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (1986). In cases involving juror misconduct, a trial court generally will not be held to have abused its discretion 'where the trial court investigates the circumstances under which the remark was made, its substance, and determines that the rights of the appellant were not prejudiced by the remark.' Bascom v. State, 344 So.2d 218, 222 (Ala.Cr.App. 1977). However, the trial judge has a duty to conduct a 'reasonable investigation of irregularities claimed to have been committed' before he concludes that the rights of the accused have not been compromised. Phillips v. State, 462 So.2d 981, 990 (Ala.Cr.App. 1984). His investigation should include a 'painstaking and careful' inquiry into the alleged juror misconduct. Lauderdale v. State, 22 Ala. App. 52, 54, 112 So. 92, 93 (1927).
". . . .
 ". . . [W]hen the trial judge acts promptly to investigate the circumstances surrounding the making of an inherently prejudicial remark by a veniremember, determining specifically whether the remark was made and whether the remark had a prejudicial effect on those who, ultimately selected to serve as jurors, heard it, there is no error in the denial of a motion for mistrial based on jury contamination.
". . . .
 " 'The standard for determining whether juror misconduct requires a new trial is set forth in Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932) [citing Lauderdale with approval].'
 " ' "The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered." '
Ex parte Lasley, 505 So.2d 1263, 1264 (Ala. 1987)."
Holland v. State, 588 So.2d 543, 546, 548-49 (Ala.Cr.App. 1991) (material in brackets added in Holland) (emphasis added inLasley omitted).
We view the bailiff's statement that six or seven veniremembers were involved in the conversation as an approximation. There is no evidence that any veniremembers other than the four who responded to the judge's question were involved. The trial judge adequately investigated the circumstances under which Juror Thompson's remark was made, its substance, and its potential prejudicial effect, and reasonably concluded that the jury was untainted. The record fully supports the judge's finding that none of the 13 empaneled jurors heard Juror Thompson's comment.
At trial the defense did not request individual voir dire of the empaneled jury. *Page 277 
There is no indication in the record that individual voir dire was necessary. See Brown v. State, 571 So.2d 345, 350-52
(Ala.Cr.App.), cert. quashed, 571 So.2d 353 (Ala. 1990), vacated,501 U.S. 1201, 111 S.Ct. 2791, 115 L.Ed.2d 966 (1991). The defense did not raise any objection on the basis that Juror Thompson's failure to respond to voir dire might have prejudiced the appellant. That issue is therefore barred from appellate review. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Exparte Frith, 526 So.2d 880, 882 (Ala. 1987). "The trial court cannot be placed in error on grounds not asserted. . . . The court was required to pass only upon the ground of the objection specified by the appellant and those not announced are waived." Johnson v. State, 421 So.2d 1306, 1311
(Ala.Cr.App. 1982).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 737